ESTATE OF ROBBINS: STATE, Appellant, vs. ESTATE OF ROBBINS and others, Respondents.*

*December 5, 1950—January 9, 1951.*
*April 16—May 8, 1951.*

* For opinion on rehearing see post, p. 210b.

For the appellant there was a brief by the *Attorney General, Harold H. Persons,* assistant attorney general, and *Neil Conway,* inheritance tax counsel, and oral argument by *Mr. Persons* and *Mr. Conway.*

For the respondents there was a brief by *Ela, Christianson & Ela* of Madison, and oral argument by *G. Burgess Ela.*

FRITZ, C. J. The county court found, so far as here material, that Jenny Loring Robbins was a resident of and domiciled in Louisville, Kentucky, when she died testate on April 1, 1946, and that she had been a resident there for many years and was never a resident in Wisconsin. At the time of her death she owned fifty-nine shares of the preferred stock of a Wisconsin corporation, and the certificate representing the stock at the date of her death was physically located in testatrix's lockbox in Kentucky, and was never physically present in Wisconsin after its issuance. Under the inheritance-tax laws of Kentucky shares of stock in foreign corporations owned by Kentucky domiciliaries at the date of their death are subject to the imposition of the inheritance tax, but in this instance because of the facts that said shares of stock are part of the residuary estate under the testatrix's will, and the residuary beneficiary, Lincoln Bank & Trust Company, is trustee for the Hattie Bishop Speed Music Room, a charitable trust, said shares were exempt from taxation in view of the provision in sec. 140.060 of the statutes of Kentucky that,—

". . . all transfers for or upon trust for any charitable, educational, or religious purpose in this state . . . *shall be exempt from the tax imposed by this chapter. . . .*"

Sec. 140.010 of said statutes provides: "All real and personal property within the jurisdiction of this state and any interest therein belonging to inhabitants of this state, all

tangible personal property wherever situated belonging to inhabitants of this state that has not acquired a situs for purposes of taxation outside of this state, all intangible property belonging to persons domiciled in this state, all intangible property belonging to nonresidents that has acquired a business situs in this state, . . . which shall pass by will or by the laws regulating intestate succession, . . . is subject to a tax upon the fair cash value as of the date of the death of the grantor or donor of the property in excess of the exemptions granted and at the rates prescribed in this chapter."

And sec. 140.275 (1) provides: "It is hereby declared to be the legislative policy that Kentucky shall not be a party to interstate double taxation under the terms of the Kentucky inheritance and estate-tax laws. Pursuant to this policy, the commissioner of revenue is hereby authorized to omit from the property subject to tax under those laws, any intangible personal property of a nonresident decedent . . . held in trust by a Kentucky trustee if the jurisdiction (state, territory, or District of Columbia) in which the decedent was domiciled grants similar immunity to residents of Kentucky, but only in the event the personal representative shall present evidence that the tax has been or will be paid to the other jurisdiction. If another state, territory, or the District of Columbia of the United States constitutionally imposes a tax on the transfer of estates or of the distributive shares thereof, but grants immunity from the tax in respect of any intangible property of its resident decedents held in trust by a Kentucky trustee, then the commissioner of revenue is hereby authorized to exclude from the property subject to tax under the Kentucky inheritance and estate-tax laws, the intangible personal property of a Kentucky resident held in trust in that jurisdiction but only in the event the personal representative shall present evidence that the tax has been or will be paid to the other jurisdiction."

These statutes were evidently intended to grant immunity from taxation to a nonresident of Kentucky if the jurisdiction

of a decedent's domicile grants similar immunity to Kentucky residents on transfers of intangible property.

However, in sec. 72.01, Wis. Stats., it is provided that,—

"A tax shall be and is hereby imposed upon any transfer of property, real, personal, or mixed, or any interest therein, . . . within the state, . . . in the following cases, except as hereinafter provided: . . .

"(2) *Nonresident's property within the state.* When a transfer is by will or intestate law, of property within the state or within its jurisdiction and the decedent was a nonresident of the state at the time of his death. . . .

"(9) *Reciprocity as to nonresident decedents.* Personal property of a nonresident decedent made taxable under this chapter, except tangible personal property having an actual situs in this state, shall not be subject to the tax so imposed if a like exemption was allowed at the time of death of such decedent by the laws of the state, territory, or district of the decedent's residence in favor of residents of this state, *provided, that this section shall not apply unless a tax is imposed on the transfer of said property by the laws of the state, territory, or district of residence.*"

That final proviso was added as an amendment to sec. 72.01 (9), Wis. Stats., by ch. 280, Laws of 1945, after the decision in *Estate of Uihlein,* 247 Wis. 476, 477, 20 N. W. (2d) 120. In that case the trial court had found as a conclusion of law,—

". . . that even if it is presumed that August E. Uihlein [a resident of New York] owned intangible property with a taxable situs in Wisconsin at the time of his death, the transfer of said property upon his death is not subject to inheritance tax in Wisconsin by virtue of the complementary reciprocal laws of Wisconsin and New York as provided by sec. 3, art. XVI, of the New York constitution, and sec. 72.01 (9), Wis. Stats."

And on an appeal we held (syllabus) :

The provision in sec. 72.01 (9), Wis. Stats. 1945, that intangible personal property of a nonresident decedent, made taxable under the Inheritance Tax Act, shall not be subject to the tax if a like exemption was allowed at the time of death of such decedent by the laws of the state of the decedent's residence in favor of residents of this state, applied so as to exempt from the Wisconsin tax a transfer resulting from the failure of a resident of the state of New York, dying in 1939, to exercise a power of appointment, where New York did not impose an inheritance tax at all on such transfer but had a like reciprocal statute. [Sec. 1, ch. 280, Laws of 1945, amends sec. 72.01 (9), Wis. Stats., so that it now provides that it *shall not apply unless a tax is imposed on the transfer of said property by the laws of the state or district* of the testatrix's residence.]

Since the enactment of ch. 280, Laws of 1945, of said proviso amending sub. (9) of sec. 72.01, Wis. Stats., there can be no immunity from taxation in Wisconsin under sub. (2) of sec. 72.01, Wis. Stats., on the transfer of the shares of stock of the Wisconsin corporation owned by the testatrix *unless* a tax on such transfer was imposed thereon by Kentucky. But because the transfer of the stock to the trustee is a charitable trust, no tax has been imposed under the laws of Kentucky on that transfer. Consequently there is no double taxation, and the reciprocity provisions in sub. (9) of sec. 72.01, Wis. Stats., are not applicable. It follows that the transfer of said shares is subject to a tax imposed under sec. 72.01, Wis. Stats., and the order appealed from must be reversed and the cause remanded with directions to determine the amount of the tax owing to Wisconsin upon said transfer.

*By the Court.*—Order reversed and cause remanded for further proceedings as directed in the opinion.

A motion for rehearing was granted on April 3, 1951, and oral argument set for April 16, 1951.

The following opinion was filed May 8, 1951:

Brown, J. (*on rehearing*). Both appellant and respondent filed motions for rehearing and each of them insisted that because we had obviously misunderstood the term "impose" as applied to tax matters we had announced a rule for the applicability of reciprocal exemptions which was not in accord with the legislative purpose and which would destroy the tax exemption now accorded by other states to the devolution of the property of Wisconsin residents and would restore the double taxation which sec. 72.01 (9), Stats., aimed to prevent. We directed a reargument of the cause. It was there made clear to us that "impose" is not the equivalent of "collect" and that a tax is "imposed," as that word is used in tax legislation and administration, if the bequest or inheritance is subject to taxation although in a given case it may be absolved from "payment" because it qualifies under some exemption. While the parties still differ concerning the Wisconsin taxability of the transfer here involved, they are agreed, and have convinced us, that the Kentucky tax has been *imposed* and it is irrelevant that Kentucky *exempts* the bequest from taxation because it goes to charity. Hence the statement in the opinion (258 Wis. 206, 210, 45 N. W. (2d) 678) "because the transfer of the stock to the trustee is a charitable trust, no tax has been imposed under the laws of Kentucky on that transfer" must be withdrawn, together with the conclusion which rests upon it.

Appellant has stated the issue thus:

". . . whether or not reciprocity exists in this case, and in the companion case, depends . . . upon the broad question of whether the *laws* of the other states meet the requirement of a 'like exemption' as provided in sec. 72.01 (9), Stats.,

when they do not go the entire way of exempting all property of a decedent resident in Wisconsin, but do require payment of a tax in some situations."

If a Wisconsin resident died owning Kentucky corporate stock under the circumstances of this case, Kentucky would not have taxed the devolution of the property of the nonresident although it would have taxed it if the deceased resided in Kentucky. The Kentucky statutes, quoted ante p. 208, so state and the attorney general of Kentucky so advised the Wisconsin department of taxation.

Appellant submits that it is not enough for Kentucky to impose the tax and then grant an exemption which would save this transfer from tax if the deceased was a Wisconsin resident and the corporation's domicile was Kentucky, and argues that because the statute defining the exemption differs from Wisconsin's it is not a *like* exemption. In *Estate of Uihlein* (1945), 247 Wis. 476, 20 N. W. (2d) 120, the same appellant argued that the controlling purpose of the legislation (sec. 72.01 (9), Stats.) was to prevent the evil of double taxation which follows if both the state of domicile and the state of the situs impose a tax. We said then that a reciprocity statute is not like an offer of a contract to be accepted in terms or not at all. The commissioners on uniform state laws have drafted a Reciprocal Transfer Tax Act to deal with this phase of inheritance-tax matters. It has been adopted, in general, by eighteen states, but 9 Uniform Laws Annotated, Miscellaneous Acts, p. 619, says: "While the state statutes listed in the table constitute substantial adoptions of the Uniform Reciprocal Transfer Tax Act, differences are so numerous that it is not feasible to point them out in detail." Wisconsin is not even in the table as a state whose laws are even substantially like the model. If the legislature, as counsel said, (and as we believe) tried by sec. 72.01 (9), Stats., to save the estates of Wisconsin resi-

dents from taxation elsewhere, we do not think it could have been so impractical as to require the states with whom it offers to co-operate to form their exemptions in the Wisconsin mould nor did it mean to refuse reciprocity on points of coincidence because some points of difference still remained. We consider that this state offered reciprocity if the state of a decedent's residence would exempt from the tax a Wisconsin resident identically circumstanced. Kentucky's laws have done so in this instance and thereby her resident is entitled to the benefit of our reciprocity statute.

The order of the learned county court must be affirmed.

*By the Court.*—The previous mandate is revoked. Order affirmed.

FRITZ, C. J., dissents on rehearing.